**J. C. PENNEY CO. v. ARBETTER et al.**

Circuit Court of Appeals, Fifth Circuit.
February 9, 1928.

No. 5196.

Injunction ⬅️128—Lease under evidence held to convey no easement to use unoccupied property as passageway.

Lease of business property *held*, under the evidence, to carry no easement to use a then vacant part of lots owned by lessors as a passageway, but such use held only by permission and terminable at will.

Appeal from the District Court of the United States for the Southern District of Texas; Joseph C. Hutcheson, Jr., Judge.

Suit in equity by the J. C. Penney Company against I. Arbetter and others. Decree for defendants, and complainant appeals. Affirmed.

Edward B. Ward, of Corpus Christi, Tex. (Gwinn & Pell, of New York City, and Howell Ward, of Houston, Tex., on the brief), for appellant.

Gordon Boone, of Corpus Christi, Tex. (H. R. Sutherland and Boone & Savage, all of Corpus Christi, Tex., on the brief), for appellees.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

BRYAN, Circuit Judge. This was a suit to enjoin the construction of a building in such manner as to close an alleged passageway to premises which appellant holds under a lease. Upon final hearing, the District Judge held that an easement was not shown by the evidence, and dismissed the bill for injunction.

At the time of the lease, the heirs of H. R. Sutherland owned lots 7 and 8, of block 5, in the city of Corpus Christi, Tex. Lot 7 is a corner lot; it fronts west on Chapparal street, is bounded on the north by Starr street, on the south by lot 8, and on the east by lot 6. Lot 8 is an inside lot fronting west on Chapparal street, and is bounded on the east by lot 5. Lots 7 and 8 are each 50 feet in width and 135 feet in depth; and their entire frontage was covered by three buildings, two of which were on the former and one on the latter. These buildings did not extend back the full length of the lots, nor to a uniform line, but varied in length from 67 to 77 feet. The Southern Hotel was partly on lot 6, but extended 38 feet from the

24 F.(2d)—6

back or east end of lot 7 to a depth of 40 feet. There was thus left an irregular vacant space on lot 7 between the two buildings on the front and the hotel in the rear, and also a vacant space of 50x65 feet in the rear of the building on lot 8. That vacant space was used with the consent of the owners for the convenience of the hotel and by the tenants on Chapparal street. There was a depression in the sidewalk on Starr street of about 10 feet in width which served as an entrance, but inside there was no defined roadway or passageway. The property was leased to appellant, but the lease did not expressly grant any right of easement to appellant. The lease provided for an extension of the building according to plans furnished by the lessee. The lessee originally intended to leave a clear space of 10 feet in the rear of the extension, with a back door entrance, and to arrange for permission to cross lot 5, but, on account of a miscalculation in the length of the lot, the extension was built up to the lot line in the rear and a side door, opening on lot 7 near the rear of the building was substituted. After appellant's lease was executed, the owners in common of both lots sold lot 7, and their grantees had a building in the course of erection which would cover the entire east end and cut off means of ingress or egress from that part of lot 7 that had theretofore been vacant.

The most that the evidence shows is the permissive use of vacant property. There is no apparent easement on any part of it. There was no defined portion which could be located. In the absence of a well-defined passageway, the buildings were so irregularly arranged as to preclude the idea that an easement was intended for the convenience of tenants. The use was so general that any part of the grounds around the hotel could equally well be claimed as an easement. The circumstance that different portions of the vacant space were used indiscriminately tends strongly to show that no definite easement of any particular passageway was intended by the owners. The fact that appellant's plans called for a rear instead of a side entrance is a strong circumstance to indicate that there was no easement implied in the lease. The evidence as a whole convincingly shows that such use of the vacant premises as was allowed was temporary in character and subject to be discontinued at the pleasure of the owners.

The decree is affirmed.